THE COURT:

The objection is sustained. Go ahead, Counsel.

BY MR. FARINACCI:

Q. All right. And in that case... You were taken to the Humacao Court, right?

A. Yes.

Q. And in the Court of Humacao, did the case go to trial, or did you plead guilty?

A. I pled guilty.

Q. All right. And that case was the first case in which you pled guilty.

A. Yes.

Q. All right. And I'd like to ask you: Were you sentenced to ten years in that case?

A. Yes.

Q. All right. And let me ask you: Were you incarcerated at 18 for that case?

A. Yes.

Q. All right. But you did not serve the full ten-year sentence, because if that case was in '89, the ten years would be done in '99.

A. Yes.

Q. All right. Let me ask you: When you were incarcerated, waiting, I mean, when you were sentenced to ten years, was it while you were incarcerated that you got the tattoos about which you testified yesterday that you were in a severe depression?

A. Yes.

Q. All right. What jail were you incarcerated in?

A. In Bayamón, 1072.

Q. In Bayamón, 1072. All right. Let me ask you: Did you do drugs at the time you committed those acts?

A. No.

Q. No? In other words, you were not addicted to drugs?

A. No.

Q. I'd like to ask you... So then, how, in what circumstances did the Court of Humacao take you out of jail reconsidering your sentence; and if you recall, what conditions did they impose on you?

A. Finish the program, finish the program which was three and a half years, and then go out in the free community.

Q. All right. I'd like to ask you: Did they take you out of jail because you said you were an addict and they sent you to Hogares Crea?

A. They got me out with that, because it was, because they asked me...

Q. And you said you were an addict?

A. Yes.

Q. You lied to the court; didn't you?

A. Yes.

Q. And are you lying to the ladies and gentlemen of the jury today?

A. No.

Q. You got out of jail, not being an addict, you were depressed, you said: "I have to get out of this mess; I have to go out on the street. I am going to tell the Court that I do drugs."

A. Yes.

Q. And you did that?

A. Yes.

Q. All right. I'd like to ask you: Do you recall having signed the warning in this case? And I'd like to ask: Did you make some commitments to the judge who gave you the opportunity?



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

A. Yes.

Q. All right. I am showing a document to the prosecutor.

THE COURT:

So noted.

PROSECUTOR:

Your Honor, Counsel has shown us a judgment document related to a case the witness had in the Humacao area. The Government has no objection to it being admitted into evidence.

THE COURT:

All right. It will be marked as a defense exhibit.

BY MR. FARINACCI:

Q. All right.

COURT CLERK:

The document has been marked as Exhibit... UNINTELLIGIBLE...

BY MR. FARINACCI:

Q. And let me ask you, Mr. Regino: Do you recall more or less the date of when you were sentenced to ten years? When you were initially incarcerated, more or less.

A. I don't recall more or less...

Q. All right. Let me ask you: How did you come to the conclusion in your mind that you could get out of jail by telling the Court, saying you were an addict? That is, how did that mental process go about? Did you think of that in jail or did you consult with an inmate who knew...

PROSECUTOR:

We object. Counsel already went over the element of him having lied about that information. We believe that asking about that is

repetitive.

THE COURT:

All right. What would be the relevance of continuing on that topic?

MR. FARINACCI:

Your Honor, Regino's mental process. Something that took time, I have to...

THE COURT:

All right. I will allow it.

BY MR. FARINACCI:

Q. How was it that in your mind, was it in your mind, or did you receive orientation from other inmates which led you to conclude: "The way for me to get out of jail is by saying I am an addict when I am really not."

A. When I was in my cell in court, a counselor from Hogares Crea approached me...

Q. Um-hmm.

A. ... and he had some documents of mine, and he asked me, because they had already referred the case to him, and it was through him that I was able to get out of prison.

Q. All right. But was he the one who told you to lie?

A. No.

Q. In other words, you lied how you wanted to?

A. Yes.

Q. You stated that you were imprisoned for several months.

A. Yes.

Q. The Court reconsidered your sentence and let you; I'd like to ask you: Did the Court impose some special conditions?



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

A. Yes.

Q. All right. Do you recall what those special conditions were?

A. That I had to finish the program in three and a half years and...

Q. Outside, or admitted at Crea?

A. Admitted.

Q. Uh-huh.

A. And then, if I were to abandon the program suddenly, then I had to go back to prison.

Q. All right. And do you also recall that another of the special conditions was that you were to be psychologically evaluated by the Corrections Administration's Evaluation and Counseling Unit? Did you go get a psychological evaluation through the commitment you made to the Court?

A. I only went as...

Q. How many times did you go?

A. While in prison, or at Crea?

Q. No. My question is: Was one of the special conditions that you had to be evaluated and that you would be subjected to psychological treatment according to that evaluation?

A. Yes.

Q. All right. Did you go to that evaluation?

A. No.

Q. You didn't go. In other words, at this time, you were asked to go to the psychological evaluation, that was in '90; and it is '96, and you have not gone to your psychological evaluation.

A. No.

Q. All right. Do you recall having signed that sentence? You don't recall? If you do. If not, tell me.

A. No. No, I don't recall.

Q. I am going to ask that the bailiff show the witness the document.

PROSECUTOR:

Your Honor, would you allow me to review it?

THE COURT:

Yes, certainly.

PROSECUTOR:

... the document...

BY MR. FARINACCI:

Q. Do you recognize the signature on the back, the back of the document?

A. Yes.

Q. Check and see whether that signature is in the three documents.

A. Yes.

Q. All right. Whose signature is that?

A. Mine.

Q. Check and see, what does that signature say? What does... that is, the signature is there, but it says something before.

A. Yes.

Q. What does it say? Read it out loud.

A. "Released on probation."

Q. Yes, but the whole sentence. Let me check. Here, "I hereby..."

A. "I hereby agree to meet each and every one of the conditions imposed in..." it ends there.

Q. "All the conditions imposed," in that sentence...

A. Um-hmm.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. ... that you signed.
A. Yes.
Q. Did you comply with that agreement you made with the Court? Yes or no?
A. No.
Q No? You made a commitment to the Court, what did you understand was your commitment? Check and see, isn't the Court giving you an opportunity to rehabilitate, and you agreed and signed; why did you not comply with the Court? Do you believe this was a matter...?

PROSECUTOR:

Your Honor, have him ask him one question...

THE COURT:

All right.

BY MR. FARINACCI:

Q. Did you believe this was a serious matter, or not a serious matter?
A. It was serious.
Q. And you were deceiving the Court in a serious matter.
A. Yes.
Q. And the Court was represented by Judge Fernando Gierbolini.
A. Yes.
Q. Let me ask you: When you were in that proceeding and Judge Fernando Gierbolini was giving you an opportunity, the fact is that you were deceiving him, the judge. Is that correct? You had no intention of going to treatment. What you wanted was to go to the street.
A. Yes. Yes.
Q. No?



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

A. I went to treatment.
Q. You went to treatment?
A. Yes.
Q. Look, you state you went to treatment.
A. Yes.
Q. At Crea, when admitted.
A. Yes.
Q. How long were you at Crea for?
A. Seven months.
Q. Seven months. How long had you agreed to be there for?
A. Three and a half years.
Q. All right. And what happened at seven months?
A. I abandoned the program.
Q. You left?
A. Yes.
Q. And continued your life of crime.
A. No.
Q. You did not continue your life of crime?
A. I went to Court, I explained why I had left DESCA...
Q. DESCA, or Crea?
A. Pardon me, Crea; and I went to DESCA.
Q. And you went to DESCA and remained in the free community.
A. No, DESCA, admitted.
Q. And how long were you there for?
A. Eight months.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. And that was when you abandoned it?

A. No, I finished it.

Q. You finished it?

A. Yes.

Q. All right. And they gave you a certificate saying you had been cured of an illness which you did not have.

A. Yes.

Q. All right. Because you told them you were an addict.

PROSECUTOR:

We have an objection; that has been said...

BY MR. FARINACCI:

Q. Okay. Very well. Let me ask you, Mr. Witness: Did you read the general conditions of the sentence? I will ask you: Where did you go live when you...? Which area did you go live when they gave you an opportunity to get out?

A. Which area?

Q. Yes.

A. Las Margaritas.

Q. All right. Check and see, did you agree with the Court in that sentence that you would remain living in the Humacao area? Look at number 1. What does it say?

A. Yes, in Humacao.

Q. All right. Will you read it out loud?

A. "You will appear before the Socio-penal Service Technician, Community Program for Corrections Administration, Humacao Regional Office. You will be advised of the date and time. If you cannot do so for reasons beyond your control, you will immediately contact the Socio-penal Service Technician, stating the reasons why you were unable to attend, and will

appear in person on the following date provided by the Technician."

Q. All right. Give me the sentence one moment. Number 3. Read it out loud, Number 3.

A. "You will remain constantly and 'uninstructedly' within..."

Q. "Uninterruptedly."

A. "... uninterruptedly within the territorial jurisdiction..."

Q. "Territorial."

A. "... of the Superior Court, Humacao Division. Any time in which you need to travel outside this limit, you will request permission to do so from the Socio-penal Service Technician for the Court."

Q. All right. I'd like to ask you: Did you comply with that condition, or did you go to Las Margaritas?

A. I complied with that condition.

Q. Did you go live in Humacao? Tell me the address.

A. No.

Q. No?

A. They transferred my case to San Juan, to the San Juan Probation Office.

Q. Yes, but did they change that condition?

A. Yes.

Q. This was changed?

A. Yes.

Q. About you staying to live in Humacao?

A. Yes. No? What do you mean, Humacao? They changed me to San Juan.

Q. Yes, but the condition of the sentence, that you were going to stay living in the Humacao territorial area, was that changed?

A. No.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.