PROSECUTOR:

But his recollection cannot be refreshed ...

THE COURT:

Let's see. The Prosecutor's objection. Go ahead.

PROSECUTOR:

Okay. We object to Counsel's use of a document to refresh recollection when that document was not produced by the witness who is testifying. In the process of refreshing recollection, the documents are documents prepared directly by the person who is testifying or documents that were prepared, based on that person's testimony, as a sworn statement. But Counsel cannot use just any document to refresh a witness's recollection when that document was neither prepared by the witness nor based on information supplied by the witness.

THE COURT:

All right. We heard Counsel state that he was willing to stipulate ...

PROSECUTOR:

Yes, we so stated. That is the position of the Prosecution. We are willing to stipulate to the date on which that death occurred.

THE COURT:

All right. Any reason, then, to ... ?

MR. FARINACCI:

No, none then, none.

THE COURT:

All right.

PROSECUTOR:

June 3, 1994, Your Honor.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

THE COURT:

Go ahead. ... ININTELLIGIBLE ... proceed with the evidence ...

BY MR. FARINACCI:

Q. June 3, 1994, one month before these alleged deaths.

A. Yes.

Q. All right. And you -- one month before these alleged deaths, you murdered a person at Cepillín's direction.

A. Yes.

Q. Is Cepillín in prison or is he out on the street?

A. He is out on the street.

Q. Out on the street. Which means that you have not testified against Cepillín in any court in a manner that has resulted in his arrest.

A. No.

Q. Which means that you say you committed a murder because Cepillín ordered you to do so one month earlier, yet you have not informed on Cepillín.

PROSECUTOR:

We object on the grounds that this is repetitive, Your Honor. The witness has already answered both premises.

THE COURT:

All right. Proceed with another line.

BY MR. FARINACCI:

Q. All right. And you committed that killing of Hiram Cantre, as the Prosecutor says, on June 3.

A. Yes.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. That's it. All right, I will change the line. Let me ask whether 2 -- 1 or 2 weeks earlier you had opened fire on other persons in the Canteras or Barrio Obrero area, and you were charged for that and have 2 cases pending in San Juan.

A. I was charged with that, yes.

Q. All right. And I ask you whether that is true or false.

A. False.

Q. That is false? In other words, the charge filed against you by a Prosecutor in San Juan is false?

A. False.

Q. False. In other words, you did not attempt to murder ... ?

PROSECUTOR:

We object ...

THE COURT:

Counsel, if you already -- the Court's instruction ...

MR. FARINACCI:

Excuse me, April 17.

THE COURT:

Counsel, limit yourself to the Court's instructions, which are not to ask about matters that he has already answered categorically.

BY MR. FARINACCI:

Q. All right. Witness, yesterday, in response to the Prosecutor's questions, you testified about some persons whom you opened fire on in the area of -- did you speak about an incident involving a shootout in the Canteras area? Isn't it true that you spoke about that?

A. Yes.

Q. Isn't that the incident for which you are charged in connection with April 17?



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

A. No.

Q. Is that another one?

A. Different one, yes.

Q. All right. Do you know a person whose last name is Carrasquillo?

A. No.

Q. All right. Witness, let me ask whether you attended an arraignment in San Juan where you were charged with attempted murder.

A. Yes.

Q. And you were present?

A. Yes.

Q. And that case, you say, is a case you had nothing to do with.

PROSECUTOR:

No, we object. Counsel is again returning to the same line concerning a charge that the witness has already stated he believes to be false.

THE COURT:

Counsel, the Court does no longer -- has already stated that Counsel established what his obligation is, what the change is. The Court ...

MR. FARINACCI:

All right. Then I am going to change the question ...

THE COURT:

Make the statement, but specify, Counsel ...

BY MR. FARINACCI:

Q. All right. Let me ask you: who is the attorney? Give me the names of the attorneys representing you in the San Juan cases.

A. One was named -- is named Reynaldo. Neither do I know his last name nor the other one's name,



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

because they represented me only once and I never saw him again.

Q. Let me ask you: are you concerned about those cases you have in San Juan?

A. As to the facts, yes.

Q. Let me ask whether you -- whether you have made any attempt to contact those attorneys regarding those cases. Yes or no?

A. No, I have not made any attempts.

Q. You have made no attempts. Let me ask whether you know that you are a fugitive from justice in connection with those cases, that you were declared a fugitive.

A. No.

PROSECUTOR:

Your Honor, I have been provided with official documents from the Superior Court of San Juan concerning certain judgments issued by Judge Bárbara Sanfiorenzo on March 29, 1995. We have no objection to their admission into evidence.

THE COURT:

All right. Mark them as a Defense Exhibit.

BY MR. FARINACCI:

Q. Let me ask whether you have been notified, whether anyone has notified you, that you have been declared a fugitive from justice in Puerto Rico.

A. No.

Q. You have not been notified?

A. No.

Q. All right. And let me ask whether you have taken any steps with your attorneys to find out the status of those cases.

A. No.

Q. Let me ask whether you have been arrested pursuant to that order declaring you a fugitive.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

A. No.

Q. Are you well ... ININTELLIGIBLE ... ?

A. The 3rd.

Q. All right. Witness, let me ask whether you stated to the ladies and gentlemen of the jury here yesterday -- whether you gave them a physical description of this person named Cristóbal.

A. Yes.

Q. Can you repeat it for the record?

A. Yes.

Q. What does Cristóbal look like?

A. Cristóbal is about 6'2" or 6'3". He is dark-skinned, with very short, closely cropped hair, a mustache that is not so ...

Q. Does he have a mustache?

A. Yes.

Q. Did you say yesterday that he had a mustache?

A. Well, he ...

Q. Does he have a mustache?

A. Yes, he has a mustache.

Q. All right.

A. And, no, a normal weight. He is not that heavy.

Q. Very well. Let me ask whether you testified, in response to the Prosecutor's questions, that on occasions you or Cristóbal murdered persons who worked for him because they stole the material from him.

A. Yes.

Q. Willie Care, Junito, and Chino, the persons who died in this case, were they employees of Cristóbal?



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

A. Yes.

Q. And they worked at the point.

A. Yes.

Q. And let me ask whether you have personal knowledge of the facts, whether you have personal knowledge that Junito, Chino, and Willie Care had stolen some material from Cristóbal.

A. No.

Q. And they had it in the car.

A. No.

PROSECUTOR:

We object to this line of questioning ...

THE COURT:

All right.

PROSECUTOR:

He has already answered that he had no knowledge of the fact Counsel is alleging.

THE COURT:

All right. Proceed with the question.

BY MR. FARINACCI:

Q. Let me ask you, witness: yesterday you stated to the ladies and gentlemen of the jury that you had seen Willie Care in the Canteras area in a vehicle, a photograph of which the Prosecutor showed you. Let's see ... while they look for the photograph, let me ask you: prior to July 4, when was the last time you had seen Willie Care in that car?

A. In the car?

Q. Yes. No, I am going to change the question. When was the last time you saw Willie Care, the last time you saw him under any circumstances whatsoever?



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

PROSECUTOR:

Before ...

BY MR. FARINACCI:

Q. Before July 4.
A. Well, it was ...
Q. Two days before, had you lost track of him? Was he hiding? How many days?
A. Weeks.
Q. Weeks?
A. Weeks, yes.
Q. Then tell me how many weeks.
A. About 3.
Q. Three weeks was the last time you saw him?
A. Yes.
Q. I can't hear you.
A. Yes.
Q. All right. Three weeks.
A. Yes.
Q. I told you under any circumstances. About 3 weeks? Had you [seen] him in this car?
A. No.
Q. Three weeks earlier?
A. No.
Q. Didn't you testify yesterday that you had seen him in Canteras in that car?
A. Yes.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. Well, and the last time you saw him 3 weeks earlier, well, it must have been 3 weeks or more since you had seen him in that car.

A. I had seen him in that car when I lived in Canteras.

Q. All right. A long time before?

A. Yes, a long time before.

Q. Didn't he buy that car one week before the events?

A. No.

Q. Is that a lie?

PROSECUTOR:

Your Honor, Counsel should clarify the question, Your Honor.

MR. FARINACCI:

All right.

THE COURT:

All right.

BY MR. FARINACCI:

Q. That car belonged to Willie Care and you had seen it a long time before in Canteras.

A. Yes.

Q. All right. And what you can be certain of is that he had not bought that car only one week before.

PROSECUTOR:

Your Honor, he should ask him whether he has personal knowledge of that fact, because Counsel ...

THE COURT:

The question has ...

PROSECUTOR:



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Has …

MR. FARINACCI:

That car was ...

THE COURT:

... ININTELLIGIBLE ...

BY MR. FARINACCI:

Q. ... belonged to Willie Care. You knew that because you had seen it there, in Canteras, many times.

A. Yes.

Q. You stated -- and I want to be clear -- that it was not 7 or 8 persons whom you murdered, but 11. Two -- look, 7 with Cristo, Hiram Cantre makes 8 ...

A. He was included among the 7.

Q. He was included? But the fact is -- was he included?

A. He is among the 7 ...

Q. When -- I mean, did Cristo work with Cepillín?

A. No.

Q. Well, then you said, "7 while working with Cristo". The one involving Cepillín makes 8.

A. That happened during that period, that same ...

Q. In other words, he is included among the 7.

A. Yes.

Q. Plus the 4 whom you say you murdered in Piñones, that makes 11.

A. Yes.

Q. Eleven?

A. Yes.

Q. All right. You specified -- fine. I want to be very clear about this: when did you begin your



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.