war with Cristo?

A. When?

Q. Yes.

A. We were already having friction over the change, the ...

Q. When were you having that friction?

A. When?

Q. Yes, the date.

A. Around '93.

Q. All right. In other words ...

A. Toward the end, around then.

Q. In other words, the war you had with Cristo and against his people, which included the persons who died in Piñones, had begun in '93.

A. Uh-huh. Yes.

Q. In '93. In other words, that was a long time before the deaths occurred.

A. Yes.

Q. All right. Yesterday you stated to the ladies and gentlemen of the jury that you have -- came to know the defendant, Juan Crespo Morales, after the death of his brothers.

A. Yes.

Q. Immediately afterward.

A. Yes.

Q. All right. Which means that if his brothers died on March 30, '94, you met him after March 30?

A. Yes.

Q. But yesterday you said it was shortly afterward, 2 or 3 days after the death.

A. Yes.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. We are talking about April 2, April 3.

A. Yes.

Q. All right. And yesterday you testified before the ladies and gentlemen of the jury. You spent about 20 minutes or half an hour talking about a meeting at a restaurant in Cidra called Lucio, where Ronald introduced him to you.

A. Yes.

Q. All right. And you gave a great deal of detail. Because that meeting is the meeting where you met Crespo ...

A. Yes.

Q. ... according to you. Isn't that right?

A. Yes.

Q. And that testimony is important and that is not something one forgets: “When did I meet Crespo?” Isn't that important?

A. Yes.

Q. “When did I meet him?” “We went to Lucio and they talked there about the death of his brothers.” And you say the restaurant has a sign that was shown to you, isn't that right?

A. I was the one who showed it to you.

Q. All right. You gave a sworn statement during the investigation of this case.

A. Yes.

Q. Isn't that right?

A. Yes.

Q. Let me ask whether you -- when was the last time you read that statement?

A. When was the last time?

Q. Yes. Or did you come here to testify without having memorized it or studied it ...



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

PROSECUTOR:

We object to the statements about his having memorized it ...

BY MR. FARINACCI:

Q. All right. Let me ask: when was the last time that ... ?

THE COURT:

Counsel, Counsel, to avoid having to continue with this -- in other words, avoid ...

MR. FARINACCI:

Excuse me, Your Honor.

THE COURT:

Go ahead.

BY MR. FARINACCI:

Q. Let me ask you very simply. You came here to testify yesterday. When was the last time you read the statement?

A. The last time I came was 3 months ago.

Q. The last time you came to this Court, to this Court, where was your immunity agreement signed?

A. Where was it signed?

Q. Yes.

A. In Federal Court.

PROSECUTOR:

No, we object to that, Your Honor.

MR. FARINACCI:

Then I will change the question.

THE COURT:



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

All right.

BY MR. FARINACCI:

Q. And let me ask whether you were willing here a short while ago ...

A. Uh ...

Q. ... isn't that right?

A. Yes.

Q. All right. And I ask you very simply. Before you sat down to testify yesterday, when was the last time you picked up your sworn statement ... ?

**(CONTINUES ON SIDE 15 -- SOME TESTIMONY IS MISSING)**

Q. Let me ask you, Mr. Witness. You stated that, in fact, it is a fact that you lived in the little house in Piñones ...

A. Yes.

Q. ... when you worked with Cristo.

A. Yes.

Q. And you knew how to get to that little house.

A. Yes.

Q. All right. And how long did you live in that little house?

A. Two weeks.

Q. Two weeks? How long before the events?

A. Around '92.

Q. In '92?

A. Yes.

Q. All right. Let me ask you: approximately how many places did you live in during this period of criminal activity? Approximately, in numbers.

A. About 5 houses.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. All right. Let's go one by one. You say that first you lived in Las Margaritas.
A. Yes.
Q. From there you went to Canteras.
A. Yes.
Q. From Canteras you say you lived in ... from Canteras, where did you go?
A. From Canteras? From Canteras I went back to Las Margaritas.
Q. You went back to Las Margaritas. From Margaritas you went back to Canteras.
A. No, from Canteras -- from Margaritas I went back to Parcelas Falú in Villa Prades.
Q. Uh-huh.
A. And from there I went to Cidra ...
Q. Uh-huh.
A. ... and from Cidra to Río Grande.
Q. All right. And I ask you -- and when ... ? And you did not mention the little house in Piñones. You also lived there for 2 weeks.
A. Yes.
Q. Any reason why you moved into that place?
A. None. I went there. I just stayed there.
Q. Did you live alone?
A. Yes.
Q. Alone. You were not hiding from anyone?
A. No.
Q. Uh-huh. Was it a house with all the amenities?
A. I had them. I brought them with me.
Q. All right. Let me ask you, witness: what about the motor vehicles?
A. Motor vehicles?



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. Yes. You say that one of them was burned.
A. Yes.
Q. Then you say that when you were arrested, you were in a van.
A. Yes.
Q. Yours?
A. Yes.
Q. How many vehicles did you have during that period?

PROSECUTOR:

Your Honor, we object. Your Honor, we fail to see what probative value that could have.

THE COURT:

All right. What is the relevance of that question?

MR. FARINACCI:

Your Honor, it is to ...

PROSECUTOR:

May we approach, Your Honor?

THE COURT:

Approach.

**... CONVERSATION WITH THE JUDGE ...**

MR. FARINACCI:

Very well. We will withdraw that line.

THE COURT:

Proceed.

BY MR. FARINACCI:

Q. Witness, in response to the Prosecutor's questions, you stated that you are testifying



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

pursuant to an immunity agreement.

A. Yes.

Q. All right. What offenses are included in that immunity agreement?

A. What does it include? What offenses? Perjury.

Q. Uh-huh.

A. Um, if I commit perjury, then ...

Q. No, no. I mean what offenses in terms of the cases you currently have pending. In other words, what offenses are part of the agreement? For example, the 4 murders. What else?

A. Well, and the sentence in San Juan.

Q. All right. The sentence in San Juan.

A. Yes.

Q. All right. Which one?

A. The murder and the 3 additional charges.

Q. And the 3 what? I did not hear you.

A. The 3 charges and the murder.

Q. All right. Those are the ones as to which you say you are innocent.

A. Yes.

Q. Let me ask you: if you are innocent, why are you going to plead guilty under that agreement if you are innocent?

A. Well, because they have to find me guilty.

Q. Because of that? Is that what you said this morning?

A. No ...

PROSECUTOR:

That has nothing to do with what he may have said this morning concerning the questions Counsel ...



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

MR. FARINACCI:

Well...

PROSECUTOR:

... extreme.

MR. FARINACCI:

... then let's ... all right.

THE COURT:

All right.

MR. FARINACCI:

I am going to change the question ...

THE COURT:

If you can ... ININTELLIGIBLE ... use ...

BY MR. FARINACCI:

Q. All right. Witness, in response to questions this morning, you said that you had nothing to do with those cases.

A. Yes.

Q. And let me ask you: if you have nothing to do with those cases, did you authorize the attorney who represented you, as part of this agreement, to have you plead guilty in cases that you say you had nothing to do with?

A. Yes.

Q. Why?

A. I cannot fight the justice system.

Q. You cannot fight the justice system. Is that your explanation?

A. Yes.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. And let me ask you whether, as part of that agreement under which you are pleading guilty to crimes you did not commit, what you are going to serve for the murder cases is 20 years.

A. No.

Q. No? Is it less?

A. 30.

Q. Let me ask you whether the reality is that it is 20. Twenty for the murders plus 10 for the revocation of probation.

A. It is 30, yes.

Q. Exactly, but for the murders it is not 30; it is 20.

A. It is 20.

Q. Twenty for 5 murders.

A. Yes.

Q. Twenty years. And I ask whether your attorney explained to you whether you are going to serve all of those years or whether you are going to serve considerably less because of the credits you receive for good conduct and work, and that it can be reduced to approximately 7 or 8 years.

A. Whether she explained that to me?

Q. Look, whether they calmly explained to you all the matters concerning your immunity agreement. You say it is 20 years for the murders.

A. Yes.

Q. Let me ask whether you expect to serve the full 20 years, or whether those 20 years are eligible for credits and you would be back out on the street, more or less, in about 7 or 8 years.

A. No. I never ...

PROSECUTOR:

We object to Counsel's questions, because in order for Counsel to



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

ask that type of question, he has to establish as a matter of fact that this is so in order to support it. Because that is impossible, since we are talking about 30 years. He is not going to serve 20; he is going to serve 30. Therefore, whatever calculation Counsel makes has to be based on the 30 years.

THE COURT:

Counsel, the Court would prefer that you ask the question and wait for the answer without suggesting it. Because in this situation we are dealing with calculations, and it is preferable for him to say whether he knows them. But do not announce an amount that ...

MR. FARINACCI:

Well ...

THE COURT:

... that ... all right. Proceed.

BY MR. FARINACCI:

Q. Let me ask you: are you 25 years old?

A. Yes.

Q. Let me ask you whether -- I am not the one saying it, right? You said it -- you are not stupid ...

PROSECUTOR:

Counsel should use the phrase within the context in which he stated it ...

MR. FARINACCI:

Yes, but, Your Honor, the record shows that he said it. During part of these events there was a point ... where he had an incident and [said], "Since I'm not stupid," well ... I am not the one saying it. I am saying what he himself said about himself.

THE COURT:

All right. Counsel, that is also a matter that he has already been asked about on more than one



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.