THE COURT:

... with a sworn statement and there is no ... because that is a concept ...

MR. FARINACCI:

All right, Your Honor, but I am asking whether he knows ...

PROSECUTOR:

But ...

MR. FARINACCI:

... exactly.

THE COURT:

No, no, but that is precisely the question. You asked him whether he was there, and he said he was not.

MR. FARINACCI:

Your Honor ...

THE COURT:

Well, you already know under Rule 6 that the other alternative is to submit it ... well, let's see whether he knows about the matter. All right.

PROSECUTOR:

The thing is that the question is being asked in the context that this person was arrested without anyone even testifying against him at that stage of the proceedings.

MR. FARINACCI:

No, I am not going to ask ...

PROSECUTOR:

No, no, but no. I believe Your Honor should explain to the ladies and gentlemen of the jury that a case ...

THE COURT:



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

All right. Just a very simple explanation of Rule 6 and nothing more. Yes.

PROSECUTOR:

All right.

THE COURT:

All right. The Court will allow that question, but the jury needs to know that, pursuant to Rule 6 of the Rules of Criminal Procedure, as ... ININTELLIGIBLE ... a case may be submitted on the basis of a sworn statement from a person who has reasons for not being ***present***. A sworn statement that provides the Judge with sufficient assurance of reliability, and the person does not have to be present. Proceed, Counsel.

BY MR. FARINACCI:

Q. Witness, let me ask whether you know -- whether you know from your own knowledge -- whether you know from your own personal knowledge -- when Mr. Crespo was arrested, whether you know if he was given the opportunity to say: "No, but that guy is crazy." If you know.

PROSECUTOR:

We object to that, Your Honor. He is -- Counsel is beginning to argue whether the ...

THE COURT:

Counsel ...

PROSECUTOR:

... the defendant's own silence, which obviously then ...

THE COURT:

All right.

PROSECUTOR:

... face the consequences.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

THE COURT:

All right. The Court determines that the witness testified that he was not present, so obviously he cannot answer that question. Proceed, Counsel.

BY MR. FARINACCI:

Q. All right. Witness, who is ***Yiye Correa***?

A. Yiye ... ?

Q. ***Correa***.

A. I know Yiye.

Q. Well, ***Yiye Correa***. Let me ask whether, on page 5 of your statement, you say that the person who gave the nickel-plated pistol was ***Yiye Correa***.

A. ***Yiye Correa***?

Q. Yes. You did not say that either? Let me show it to you, on page 5. Don't you see it?

A. No.

PROSECUTOR:

No, that is not the page.

MR. FARINACCI:

It is on page 4.

THE COURT:

All right.

BY MR. FARINACCI:

Q. It is on page 4. Take a look. At the bottom. See who you say gave the firearm to Miguel.

A. Yes.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. What does it say there?

A. ***Yiye Correa***.

Q. ***Yiye Correa***.

According to you, is that another error by the court reporter?

PROSECUTOR:

Your Honor, that is argument by Counsel ...

THE COURT:

Objection ... sustained ...

PROSECUTOR:

Allow the witness to ...

THE COURT:

That is argument. Ask him the question ...

PROSECUTOR:

... answer the question.

BY MR. FARINACCI:

Q. You read it before -- I ask whether you ...

PROSECUTOR:

Your Honor, I want him to answer the last question Counsel asked him.

THE COURT:

All right. Counsel is withdrawing it ...

MR. FARINACCI:

I withdraw it and will ask another.

THE COURT:

All right. Proceed.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

MR. FARINACCI:

Q. You read that sworn statement, and not only did you read it, but you also initialed it with your signature along the sides. Let me ask whether you read it.

A. Yes.

Q. All right. And you read that it said Yiye Correa. But the truth is that you did not know anyone named Yiye Crespo.

THE COURT:

Answer.

A. Yes, I know him.

BY MR. FARINACCI:

Q. And why didn't you tell him ... no, I know you know him now because you have seen him here.

PROSECUTOR:

No, we object to that, Your Honor. That is an improper statement ...

THE COURT:

Counsel ...

MR. FARINACCI:

The witness ...

PROSECUTOR:

Your Honor ...

THE COURT:

Counsel, the point has been reached where the Court has to put a stop to this. Counsel, approach the bench.

**... SIDEBAR CONFERENCE ...**

BY MR. FARINACCI:



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. Let me ask whether you read it.
A. Yes.
Q. And let me ask whether something as important as that, who gave the firearm to Miguel, caught your attention. You should have responded: "Yiye Crespo? I don't know anyone named Yiye Correa."
A. When I read it, well, I simply did not notice it.
Q. Let me ask you, witness: you testified that several days before -- a few days before the events, you and your wife were shot at. Was the little girl in the car?
A. The little girl? No.
Q. Let me ask whether these same persons who died also shot at your house 2 weeks earlier and wounded 2 persons who worked for you.
A. One month earlier.
Q. One month earlier. And let me ask -- let me ask whether the reason you murdered these persons in Piñones was that these persons who died had shot at your house, wounded persons who worked for you, then shot at you and nearly killed you and your wife, and that is why several days later you went and killed them.
PROSECUTOR:
As to the second premise of the question ...
THE COURT:
Counsel ...
PROSECUTOR:
... he has already given him the answer, Your Honor.
THE COURT:
All right.
BY MR. FARINACCI:..



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. And let me ask whether you ...

THE COURT:

Stop. Answer the second part of that question. Whether the reason you killed those persons was because they had shot at your associates days ...

A. There were several reasons. That was one of them.

THE COURT:

All right. The question has been answered.

BY MR. FARINACCI:

Q. And your sister -- did those persons who died also shoot at her?

A. My sister?

Q. Yes.

A. No.

Q. No?

A. No.

Q. Witness, let me ask you: what persons visited you at the Bayamón Regional Jail during the period when you say you were incarcerated before deciding to speak about this case? Before deciding to say what you are saying in this case.

A. What persons?

Q. Yes.

A. My mother, my wife, my daughter, and my 2 sisters.

Q. All right. Were those the only persons who visited you?

A. Yes.

Q. All right. Let me ask you. This morning you said that when you were incarcerated in connection with the Humacao cases, you suffered from severe depression.

A. Yes.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. All right. Let me ask whether, on this second occasion when you were incarcerated, you suffered another severe depression. Or were you all right this time?

A. No. I was calm.

Q. You were calm?

A. No.

Q. Well ...

A. Yes, I was depressed, thinking about the problems I had.

Q. All right. And you are a person who thinks about the problems you have and likes to try to solve them. Isn't that right?

A. I think that -- I don't know -- they are my problems and I have to think about how to solve them.

Q. All right. All right. In Humacao, while you were incarcerated under similar circumstances, you thought that the solution to your problem was to lie and say that you were an addict.

PROSECUTOR:

We have an objection. Counsel already brought that out as part of his cross-examination ...

MR. FARINACCI:

Yes, but ...

THE COURT:

He is using it as a premise for what he is about to present. Proceed. Up to that point.

BY MR. FARINACCI:

Q. When you were in Humacao, you recall from this morning that you decided that, as part of the solution to your problem, you were going to lie and tell the Court that you were an addict so that you could get out of jail.

A. Ignorance.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Q. Ignorance. That is your answer, ignorance.

A. Yes.

Q. Let me ask whether the situation you are in on this second occasion is similar. You are incarcerated and have to solve your problem. Let me ask whether the same thing as before crossed your mind: "Let me make up that Yiye Crespo sent me so that I can negotiate a good agreement and get out in a short time."

A. No.

Q. Let me ask whether Yiye Crespo is now what you were before, when you had said that you were an addict.

A. Repeat the question.

Q. You did not understand it?

A. No.

Q. Whether Yiye Crespo is now the card you are playing so that you can get out as soon as possible from a case involving four heinous murders.

A. No. He is not any kind of card.

Q. No, he is not any kind of card. What you mean is that even though you were sent for treatment, for a psychological treatment evaluation, you are -- you say that this time things are different. Let me ask you: what has happened in your life that allows you to tell the ladies and gentlemen of the jury that you can now be trusted?

A. What have I done?

THE COURT:

What is the situation? You did not understand the question?

A. Yes.

THE COURT:

Ask him the question.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

BY MR. FARINACCI:

Q. What has happened in your life ...

A. Uh-huh.

Q. ... that allows you to look the ladies and gentlemen of the jury in the eye and tell them that, in this situation, you are different from the person you were when you made up the claim that you were an addict in order to get out? I ask whether, this time, you did not make up another person's involvement in order to get out.

PROSECUTOR:

He completely changed the question, and that one had already been answered, Your Honor.

THE COURT:

All right. Well, we understand that the question, as Counsel has now phrased it, has not previously been asked. Proceed with the answer.

A. Well, when I got involved in the Humacao case, I was 18 years old, I was ignorant, and now I am not ignorant.

Q. All right. Do you know more now than you did 18 years ago?

A. No.

Q. No? Do you know less? Let me ask you. When you were 18 years old, you say you were ignorant.

A. Yes.

Q. When your car was burned and you sent it to the insurance company, you said: “I'm not stupid.”

A. Yes.

Q. Let me ask you: did you ever speak by telephone with the persons who died in this case?

A. Never.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.